## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **SANDRA WALKER,** | **Case No.:** 1:24-CV-8929 |
| **Plaintiff,** | |
| **v.** | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **EXPERIAN INFORMATION SOLUTIONS INC., EQUIFAX INFORMATION SERVICES LLC and FAIR COLLECTIONS AND OUTSOURCING INC. a/k/a FAIR COLLECTIONS AND OUTSOURCING OF NEW ENGLAND INC.,** | |
| **Defendant.** | |

Plaintiff Sandra Walker ("Plaintiff"), by and through her undersigned attorneys, alleges the following against the Defendants EXPERIAN INFORMATION SOLUTIONS INC. ("Experian"), EQUIFAX INFORMATION SERVICES LLC ("Equifax") and FAIR COLLECTIONS AND OUTSOURCING INC. a/k/a FAIR COLLECTIONS AND OUTSOURCING OF NEW ENGLAND INC. ("FCO") and alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681a–x and the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. §§ 1692-1691p.

2. Plaintiff is the victim of what is now a common crime—identity theft. A fraudster used Plaintiff's personal information to enter into a residential lease agreement with Oak Park Place without Plaintiff's knowledge or consent. This fraudster defaulted on the lease, which

1

resulted in a record of an eviction and negative marking on Plaintiff's credit reports. The original creditor Oak Park Place turned over the fraudulent lease debt to FCO for collection.

3.  Plaintiff has asserted the factual truth—she did not enter into a residential lease agreement with Oak Park Place and she has never resided at any address owned or operated by Oak Park Place, and she did not authorize the underlying lease to be opened. Yet FCO continued to press on.

4.  FCO also reported the inaccurate account to Experian and Equifax. Plaintiff disputed the inaccuracies to them as well, to no avail.

5.  The FCRA demands of reporting agencies like Experian and Equifax that they utilize reasonable procedures to assure the maximum possible accuracy of the information they report. *15 U.S.C. § 1681e(b)*. When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. *15 U.S.C. § 1681i*.

6.  The FCRA demands that when a consumer like Plaintiff disputes the accuracy of information through the credit reporting agencies, those disputes are transmitted to the party furnishing the information, here FCO. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

7.  FCO violated the FCRA, Section 1681s-2(b), when it received Plaintiff's disputes from the agencies and failed to reasonably investigate those disputes. Instead, discovery will show all FCO did was consult its own records about the account and confirm to the agencies the inaccurate information it was already reporting.

2

8. Plaintiff also brings claims under Sections 1692d, 1692e, 1692e(2), 1692e(8), 1692e(10), 1692f, 1692f(1) and 1692g of the FDCPA against FCO for its deceptive acts and practices in the course of attempting to collect the alleged debt from Plaintiff.

## JURISDICTION & VENUE

9. This Court has jurisdiction pursuant to 15 U.S.C. § 1681(p), 15 U.S.C. § 1692k and 28 U.S.C. § 1331.

10. Venue is proper in this District per 28 U.S.C. § 1391, as the acts, omissions and transactions that give rise to this action occurred, in substantial part, in this District.

11. Venue is also proper in this district because, Plaintiff resides in this District.

12. Venue is also proper in this district because, the Defendants conduct business in this District, and the injury occurred in this District.

## ALLEGATIONS AS TO PARTIES

13. Plaintiff, Sandra Walker, is a natural person residing in the State of Illinois.

14. Sandra Walker is a "consumer" as said term is defined under the FCRA, 15 U.S.C. § 1681a(c), and the FDCPA, 15 U.S.C. § 1692a(3).

15. Defendant Experian Information Solutions Inc. is headquartered in California and does business in the State of Illinois through it registered agent located in Chicago, Illinois.

16. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), and it disburses consumer reports to third parties for monetary compensation.

17. Defendant Equifax Information Services LLC is headquartered in Georgia and does business in the State of Illinois through its registered agent located in Springfield, Illinois.

18. Equifax is a "credit reporting agency," as defined in 15 U.S.C. § 1681a(f) and it disburses consumer reports to third parties for monetary compensation.

3

19. Upon information and belief Defendant Fair Collections and Outsourcing Inc. a/k/a Fair Collections and Outsourcing of New England Inc., is a foreign business corporation that did transact and does now presently transact business in the State of Illinois.

20. Defendant FCO is authorized to conduct business in the State of Illinois through its registered agent located in Springfield, Illinois.

21. Upon information and belief, the principal purpose of FCO is in the business of the collection of debts, using instrumentalities of interstate commerce, including mails and telephone; and it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

22. FCO is a "person," as defined in 15 U.S.C. § 1681a(b).  Upon information and belief, FCO regularly reports and furnishes information to consumer reporting agencies in its efforts to collect debts from consumers.  The information becomes components of consumers' consumer profiles in determining consumers' credit worthiness, credit standing and credit capacity.

23. FCO is also a "furnisher" of information as defined by the FCRA and caselaw interpreting the statute.

24. FCO is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

25. Defendants acted through their agents, employees, officers, members, directors, heirs, predecessors, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

4

## GENERAL FACTUAL ALLEGATIONS

*Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of Experian's Creditor-Customers*

26. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001)."In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

27. "Section 1681e(b) sets forth the CRAs' overall du[t]y:

(b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."
*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

28. Section 1681i(a), on the other, hand requires much more from a CRA after consumer has placed it on notice of an inaccuracy through her dispute:

[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period[.]

*15  .S.C. § 1681i(a)(1)(A).*

29. Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

30. It has long been the law that a CRA, such as Experian and Equifax, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item. *See, e.g., Pinner v. Schmidt,* 805 F.2d 1258, 1262 (5th Cir.1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

31. That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir.1997).

32. As the Fourth Circuit explained in *Johnson v. MBNA*:

The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed. 2000); *see* Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

3573d 426, 430 (4th Cir. 2004).

33. Further, as the CRA Defendants are aware, courts have held that even though the term "investigation" is not used in § 1681e(b), it is clear that Defendants have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.
*Burke*, 2011 WL 1085874, at *4.

34. It has long been the law – since 1970 in fact – that:

[W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

35. Today, furnishers such as FCO and other of the CRA Defendants' furnishers have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2.

---

[1] Available at https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

But while the CRA Defendants' duties under § 1681e(b) were enacted in 1970 and have governed since, the duties on furnishers are much recent, enacted on in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

### *Plaintiff Discovers FCO Inaccurately Reporting a Credit Account That Did Not Belong to Her*

36. The Plaintiff realleges and incorporates the foregoing paragraphs above as if fully set out herein.

37. Today, furnishers such as FCO, has its own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2.

38. Sometime prior to this filing this action, Plaintiff's personal information was obtained by a fraudster unknown to the Plaintiff.. Among the accounts the fraudster opened was a residential lease agreement with Oak Park Place. Eventually, the fraudster defaulted on the lease, which resulted in a record of an eviction and negative marking on Plaintiff's credit reports.

39. This was when Plaintiff discovered that she was the victim of what is now a common crime—identity theft. A fraudster used Plaintiff's personal information to enter into a residential lease agreement with Oak Park Place without Plaintiff's knowledge or consent.

40. On a date and time better known to Oak Park Place and FCO, Oak Park Place transferred the fraudster's defaulted account to FCO for collection ("The FCO account").

41. Consequently, Defendant began its collection efforts to collect the fraudulent debt from Plaintiff.

42. Plaintiff has never entered into a residential lease agreement or any other account with Oak Park Place or FCO, nor did she authorize anyone on her behalf to enter into a residential lease agreement or open an account with Oak Park Place or FCO.

43. Consequently, Plaintiff contacted FCO to dispute the FCO account directly with FCO and to request validation of the alleged debt.

44. Plaintiff has informed FCO that her identity was stolen, and the fraudulent debt did not belong to her.

45. FCO has ignored Plaintiff's entreaties that her identity was stolen, and the alleged account was fraudulently obtained, and has not only failed to close the account, but steadfastly continued to engage in collection activity against the Plaintiff.

46. Defendant attempted to collect a debt from the Plaintiff, knowing that she does not owe the debt.

47. Defendant attempted to collect a debt from the Plaintiff, knowing that there is no contract or agreement authorizing the debt.

48.  Defendant attempted to collect a debt from the Plaintiff, knowing that it is not permitted by law.

49. Defendant attempted to collect a debt from the Plaintiff, knowing that it misrepresented the amount and character of the debt.

50. Defendant attempted to collect a debt from the Plaintiff, by failing to send the consumer a 30-day validation notice within five days of its initial communication.

*Plaintiff Disputes the Inaccuracies With the CRAs*

51. Having learned that FCO was inaccurately reporting the status of the account to the Experian and Equifax, Plaintiff sent disputes to Experian and Equifax to attempt to have them remove the inaccuracies from his credit reports.

52. On or around August 2023, Plaintiff sent correspondence to Experian, requesting that Experian verify and correct the inaccurate, erroneous and unverified representations made by FCO on her credit file.

53. Within that letter, Ms. Walker explained that the inaccuracies Experian was attributing to the FCO account was due to identity theft and the account did not belong to her.

54. The information furnished by FCO to Experian, was at all times inaccurate. Plaintiff's identity was stolen to open the account.

55. On or about a date better known to Experian and FCO, Experian furnished Plaintiff's dispute to FCO using an electronic system called "e-Oscar," which is an industry-wide process by which such disputes are electronically communicated to furnishers and dispute results back to Experian.

56. e-Oscar is also the system by which FCO has agreed they will accept such consumer disputes from Experian.

57. Under such circumstances, FCO became obligated under the FCRA to investigate Plaintiff's dispute.

58. On or around August 2023, Plaintiff sent correspondence to Equifax, requesting that Equifax verify and correct the inaccurate, erroneous and unverified representations made by FCO on her credit file.

59. Within that letter, Ms. Walker explained that the inaccuracies Equifax was attributing to the FCO account was due to identity theft and the account did not belong to her.

60. The information furnished by FCO to Equifax, was at all times inaccurate. Plaintiff's identity was stolen to open the account.

61. On or about a date better known to Equifax and FCO, Equifax furnished Plaintiff's dispute to FCO using an electronic system called "e-Oscar," which is an industry-wide process by which such disputes are electronically communicated to furnishers and dispute results back to Equifax.

62. e-Oscar is also the system by which FCO has agreed they will accept such consumer disputes from Equifax.

63. Under such circumstances, FCO became obligated under the FCRA to investigate Plaintiff's dispute.

64. Subsequent to Plaintiff's disputes, Experian and Equifax failed to remove the inaccurate information regarding the fraudulent FCO account contained within Plaintiff's credit reports.

### *Disputes With FCO*

65. Upon discovering the identity theft, Plaintiff immediately disputed the fraudulent account with FCO.

66. FCO denied the Plaintiff's claim.

67. In or around August 2023, Plaintiff disputed the FCO collection account directly with Experian and Equifax.

68. In each instance in which Plaintiff disputed the FCO account with Experian and Equifax, Experian and Equifax forwarded Plaintiff's dispute(s) to FCO via e-Oscar.

69. Under such circumstances, FCO became obligated under the FCRA to investigate Plaintiff's disputes.

70. Plaintiff's disputes to FCO to attempt to have it reinvestigate her complaints went unanswered, as FCO continued to report the fraudulent and derogatory collection account as belonging to Plaintiff.

71. FCO failed to reinvestigate Plaintiff's complaints.

72. Discovery will show that all FCO did when supposedly investigating Plaintiff's disputes was consult its own internal account records and simply report back to Experian, Equifax and Trans Union the same inaccurate information Plaintiff was disputing.

73. The information furnished by FCO to Experian and Equifax was at all times inaccurate.

74. On or about a date better known to Experian and FCO, Experian furnished Plaintiff's disputes to FCO.

75. On or about a date better known to Equifax and FCO, Equifax furnished Plaintiff's disputes to FCO.

76. FCO failed to reasonably reinvestigate Plaintiff's disputes that FCO received from Experian and Equifax in violation of § 1681s-2(b)(1)(A) of the FCRA.

77. FCO further violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to delete the FCO account due to fraud after receiving Plaintiff's dispute(s) from Experian and Equifax prior to the commencement of this action.

78. Experian and Equifax responded to Plaintiff's dispute(s), claiming the information was reported verified as accurate and the information was updated. This response confirms that Experian and Equifax communicated Plaintiff's disputes to FCO.

79. By its actions as described herein, FCO furnished communicated false credit information in an attempt to oppress and harass Plaintiff into paying a debt she did not owe.

### *The CRA Defendants Did Not And Do Not Conduct Any Investigation Of Most Consumer Disputes*

80. Unknown to the Plaintiff until this lawsuit, it has long been the practice of Equifax to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to a third-party outsource vendor located overseas. Equifax uses a vendor, previously known as Intelenet Global Services and now as Teleperformace.

81. It has long been the practice of Experian to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to an affiliated company, Experian Services Chile, S.S. in Santiago, Chile.[2]

82. The CRAs' dispute processing vendor is not hired to perform an actual FCRA investigation. Instead, its sole responsibility is to read consumer dispute letters, select one of a handful of common dispute codes from a drop-down menu and then click that code.

83. In fact, the CRA Defendants strongly encourage consumers to make disputes through their online websites. When consumers do so, the consumer has to click one of just a few available dispute reasons (such as "Not my account."). The online dispute then is outputted into the "e-Oscar" system described below without ever touching human hands or being

---

[2] Experian long ago lost the argument that testimony from these dispute agents requires more than a garden-variety Rule 30 notice. *Calderon v. Experian Info. Sols., Inc.*, 290 F.R.D. 508, 510 (D. Idaho 2013). In recent litigation by Plaintiff's Counsel in the Eastern District of Virginia, *Sublett v. Nissan of Richmond, et al.*, No. 3:20-cv-00156 (E.D. Va.), however, Experian presented the supposed third-party Chilean dispute investigator pursuant to Plaintiff's notice of deposition under Rule 30. To the extent Experian would argue here that it cannot produce the Chilean dispute agents pursuant to a Rule 30 notice, then Plaintiff will pursue her 1681i failure-to-investigate claim on the theory that no investigation was conducted by the CRA.

read by human eyes at Equifax. It gets sent to Defendants' creditor customer for its sole review and consideration.

84. Here is how it the written mail dispute process actually works: for Equifax, a third-party document processing company in Atlanta maintains several Post Office boxes for receiving consumer mail to Equifax such as disputes, requests for a credit file disclosure or other communication. That mailbox company receives consumer disputes, scans them into a batch of other disputes.

85. Experian's dispute processing simply takes the disputes out of its hands and places them into what Experian has argued is an unrelated third party.

86. Equifax then forward the dispute mail batches to the same third-party, Teleperformance, based in Mumbai, India. Teleperformance uses low-wage employees to work quickly to process the consumer dispute letters received from the Atlanta-based mail company, skimming the letters and selecting one of a handful of codes from a dropdown menu to best describe the consumer's detailed dispute information in 2 digits. For example, the most common relevant code is: "01 Not his/her."

87. Teleperformance agents are not allowed to do any of these things: contact the consumer; use the telephone or e-mail to investigate; research; contact the furnisher directly; or take longer than 5 minutes per dispute.

88. Equifax has taken the position in other litigation that it has no control over Teleperformance. For example, under oath before another court just this year, Equifax's representative employee testified: "Intelenet has no corporate affiliation with Equifax. Intelenet is not a corporate partner of Equifax. Rather, Intelenet is a company wholly separate from Equifax and is a party to a contract with Equifax wherein Equifax hired

Intelenet to assist Equifax with various matters. Neither Mr. Negi nor Mr. Singh [the dispute processing agents] are employees of Equifax." *Miller v. Equifax Info. Serv.*, No. 4:19-cv-584, ECF 47-1 (M.D. Fl. Sept. 18, 2020). And in its briefing in that same case, Equifax argued, "Courts have determined that Intelenet is a separate legal entity, not controlled by a party."

89. Regardless of whether these statements are correct, Equifax believes that it cannot direct, control, manage or reliably influence the employees of their third-party Indian outsource vendor.

90. Equifax did not conduct any reinvestigation of Plaintiff's many disputes. Instead, it merely caused them to be removed from their control to be saved within a database by an overseas data-processing vendor.

### *Plaintiff Suffered Actual Harm*

91. Defendants have continued to report the erroneous account on the Plaintiff's credit reports, despite being notified that Plaintiff was not the debtor and a victim of identity theft.

92. Plaintiff has been attempting to resolve these matters with Defendants for over three years and her credit was significantly destroyed by Defendants' failure to correct the inaccurate reporting.

93. As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

    a.  Loss of potential apartment leases;

    b.  Multiple apartment denials;

    c.  An eviction from her place of residence;

    d.  Damage to her credit profile;

e. Stress associated with multiple denials for credit and delays in applying for future lines of credit;

f. Extreme stress, anxiety and humiliation at the thought and possibility of being homeless;

g. Monies lost by attempting to fix her credit, e.g. communication costs, postage for disputes;

h. Loss of time attempting to cure the error;

Mental anguish, stress, aggravation, anger, anxiety, humiliation, frustration, and other related impairments to the enjoyment of life.

i. Stress associated with many hours attempting to resolve this matter in the last three years.

### *Defendants' Conduct Was Willful*

94. The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

95. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton,* 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.,* 526 F.3d 142, 151 (4th Cir. 2008).

96. As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The language of § 1681s-2(b) has not changed. The

Defendant's dispute investigation obligations under § 1681s-2(b) have not changed. The FCRA's caution of Defendant's "grave responsibilities" to ensure accuracy has not changed.

97. The CRA Defendants have received many thousands of disputes and other complaints regarding the creditors at issue in this case – sufficient to require a reasonable company to at least examine or investigate further before blindly accepting further reporting.

98. Just in federal court alone, during the last decade the creditor-furnishers disputed by Plaintiff has had to defend collectively over 1,000 consumer lawsuits.

99. In many or even most of these FCRA lawsuits brought by a consumer, one or more of the CRA Defendants was a named co-defendant.

100. The CRA Defendants knew or should have known of this litigation history. They use and have access to PACER to investigate and monitor such consumer complaints.

101. The CFPB has maintained a Consumer Complaint database since 2017. It receives a small percentage of the total consumer credit reporting complaints made nationwide, as many multiples more are made directly to the Defendants, and/or to other government agencies, attorneys, or non-profit organizations.

102. Each Defendant regularly receives unredacted consumer dispute details from this database.

103. Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Equifax.

104. Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Experian.

105.     Further, over 35,000 of the CFPB complaints against Equifax, and more than 33,000 complaints as to Experian, were based largely on their failure to reasonably investigate consumer disputes.

106.     Just in the last 12 months alone, Experian and Equifax have each been sued on by consumers alleging their violation of the FCRA over 2,000 times.  Most of these alleged that the Defendants violated § 1681i(a) by failing to conduct a lawful reinvestigation of the consumer's accuracy dispute.  This complaint history has been true for nearly every year over the last decade.

107.     While the thousands of consumer complaints and hundreds of thousands of consumer disputes alone would have put Defendants on notice of the failures of their dispute investigation procedures in ensuring accuracy, numerous Federal District and Circuit Courts have placed the CRA Defendants on notice that they may not merely "parrot" what their creditor-customer tells them if the consumer had provided a substantive and detailed dispute.

108.     Experian and Equifax have had actual notice from numerous other courts that their blind ACDV "parroting" was unlawful. *See, e.g.*, *Centuori v. Experian Info. Sols., Inc*., 431 F. Supp. 2d 1002, 1008 (D. Ariz. 2006) ("'The grave responsibility imposed by [the FCRA] must consist of something more than merely parroting information received from other sources.'"); *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 904 (3d Cir. 2011); *Pourfard v. Equifax Info. Sols. LLC*, 2010 WL 55446 (D. Or. Jan. 7, 2010) ("[T]he caselaw is clear that a reporting agency does not act reasonably under the FCRA by deferring entirely to another source of information."); *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066, 1073-74 (D. Or. 2011) ("[Equifax] instead utilized an automated

dispute system to verify the accuracy of plaintiffs' account. Many courts, including this one, have concluded that where a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without additional investigation.").

109.     Equifax has even been warned by its home District Court, the Northern District of Georgia, which detailed:

> Equifax argues that the creditor is the party responsible for investigating the dispute, once notified of it by the reporting agency. 15 U.S.C.A. § 1681s-2(b) (1998). According to Equifax, the reporting agency's duty under § 1681i is fulfilled once it forwards the complaint to the creditor, the entity in the best position to undertake an accurate investigation. Under § 1681s-2(b), furnishers of information, such as creditors, have certain duties to investigate consumers' disputes. Yet, this does not end the inquiry, or establish that the reporting agency has no responsibility beyond serving as a conduit for consumers' complaints.
>
> To the contrary, a credit reporting agency does not conduct a reasonable investigation by deferring entirely to another source of information. "In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." *Stevenson,* 987 F.2d at 293. The FCRA "places the burden of investigation squarely on" the reporting agency. *Id.; see also Henson v. CSC Credit Servs.,* 29 F.3d 280, 286-87 (7th Cir. 1994); *Swoager v. Credit Bureau,* 608 F.Supp. 972, 976 (M.D. Fla.1985).

*Sampson v. Equifax Info. Servs., LLC*, No. CIV.A. CV204-187, 2005 WL 2095092, at *5 (S.D. Ga. Aug. 29, 2005).

110.     Defendants have also been repeatedly criticized by Federal and state regulators, and consumer groups for the refusal or failure to conduct substantive reinvestigations.

111.     In 2015, a large group of state Attorneys General forced a consent order from the CRA Defendants by which they were required to develop procedures necessary to comply

with the FCRA.[3]  The AG Settlement required amongst many changes and mandates that the Defendant comply with § 1681i(a).

112.    The AG Settlement also required the CRA Defendants to conduct significant research and data gathering – even creating a "working group" to address these issues, and to develop special procedures to handle disputes as in this case.  Notwithstanding these requirements, the Defendants did not meaningfully comply with the AG Settlement in these regards.

113.    Defendants are also aware of substantive and detailed criticism by public interest groups about their automated dispute system.  For example, in 2009, the National Consumer Law Center ("NCLC"), the organization that publishes the leading egal treatise in this field, also published a scathing research paper detailing the actual process followed by Defendants when a consumer makes a dispute.  That report was updated in 2019.  AUTOMATED INJUSTICE REDUX *Ten Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Reporting Errors*, National Consumer Law Center, February 2019. ("NCLC Report").[4]

114.    The NCLC Report summarized its context:

> Ten years ago, the National Consumer Law Center (NCLC) issued Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports, the landmark report on the serious dysfunctions in the American credit reporting system. Since then, the Consumer Financial Protection Bureau (CFPB) began exercising supervision authority over the Big Three credit bureaus (Equifax, Experian and Trans Union), and started the difficult task of compelling them to reform their procedures and practices. A coalition of more than 30 state Attorneys General reached a breakthrough settlement with the credit bureaus in 2015, requiring an array of reforms. Despite these very laudable

---

[3]    *Available at* https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

[4] *Available at* https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

achievements, the credit bureaus and the companies that supply them with information still have serious problems in ensuring the accuracy of credit reports, affecting millions of American consumers. The dispute process required by the Fair Credit Reporting Act (FCRA) that was intended to fix these problems remains ineffective and biased.

115.    Among many of the Defendants' accuracy failures, the NCLC Report discovered:

- **Insufficient Information Conveyed and Considered in Investigation**.  Credit bureaus use the highly automated e-OSCAR system to convey disputes to furnishers, primarily using shorthand two- or three-digit codes, and at most only a line or two of text in a minority of instances. The credit bureaus use the same four or five codes over 80% of the time.

- **Failure to Transmit Information Submitted by the Consumer**. Credit bureaus failed to send supporting documentation submitted by consumers to furnishers, in clear violation of the FCRA.

- **Perfunctory Credit Bureau Investigations**. Credit bureaus limit the role of their employees who handle disputes, or of the foreign workers employed by their offshore vendors, to little more than selecting these two or three digit codes. Workers do not examine documents, contact consumers by phone or email, or exercise any form of human discretion in resolving a dispute.

- **Credit Bureaus Always Side with Furnishers**. Credit bureaus are universally biased in favor of furnishers and against consumers in disputes. In a practice known as "parroting," credit bureaus blindly adopted the response of the furnisher without performing any independent review.

NCLC Report at 6.

116.    Despite the notice and judicial, regulatory and public interest criticism, Defendants have refused to change their dispute investigation process because it would cost too much money to do so.

117.    Defendants' procedures imposed on the Plaintiff and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## CLAIMS FOR RELIEF

### COUNT 1: AGAINST EXPERIAN AND EQUIFAX
### Violation of § 1681e(b) of the FCRA

118.    Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

119.    Defendants Experian and Equifax willfully violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports and consumer files they published and maintained concerning the Plaintiff.

120.    As a result of this conduct, action and inaction of Experian and Equifax, the Plaintiff suffered damage by Loss of potential apartment leases, multiple apartment denials, an eviction from her place of residence, damage to her credit profile, stress associated with multiple denials for credit and delays in applying for future lines of credit, extreme stress, anxiety and humiliation at the thought and possibility of being homeless, monies lost by attempting to fix her credit, loss of time attempting to cure the error, mental anguish, stress, aggravation, anger, anxiety, humiliation, frustration, and other related impairments to the enjoyment of life, and stress associated with many hours attempting to resolve this matter in the last three years.

121.    Further, after the Plaintiff's detail disputes put them on notice of likely inaccuracies and reasons to doubt the correctness of the reporting of their creditor-customers, Experian and Equifax ignored such information and did not use any human or substantive review to confirm and verify that its procedures were ensuring maximum possible accuracy of the Plaintiff's credit reports.

122.     Each Defendant furnished multiple consumer reports to third parties containing the inaccurate tradeline information and each Defendant did so after receiving notice of these inaccuracies.

123.     Experian's and Equifax's conduct, action and inaction were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

124.     As a result of Experian's and Equifax's violations of 15 U.S.C. § 1681e(b), the Plaintiff is entitled to recover their actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative their statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

125.     The Plaintiff is entitled to recover costs and attorney's fees from Experian and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT 2: AGAINST EXPERIAN AND EQUIFAX
### Violation of § 1681i of the FCRA

126.     Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

127.     Experian and Equifax each violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from each of the Plaintiff's credit files.

128.     Furthermore, Experian and Equifax violated Section 1681i by conducting ***no investigation at all***. Section 1681i demands that when Plaintiff notified each CRA directly of his disputes, that party—the consumer reporting agency who received the disputes—

23

must investigate those disputes. The statute does not contemplate someone other than Experian or Equifax conducting the investigation.

129.     Yet, Equifax used an unrelated third-party, Intelenet, over which neither CRA has control to conduct its investigations. Intelenet is not, in the words of the statute, "the [consumer reporting] agency" to whom Plaintiff disputed. Equifax, therefore violated 1681i on this basis because they sent Plaintiff's disputes away to a company that was not their controlled agent rather than investigating them as required.

130.     As a result of Defendants' violations of 15 U.S.C. § 1681i, the Plaintiff is entitled to recover actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

131.     Defendants' conduct, action, and inaction was willful, rendering each Defendant liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

132.     The Plaintiff is entitled to recover costs and attorneys' fees from Experian and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT 3: AGAINST FCO
### Violation of § 1681s-2(b)(1)(A) and (B) of the FCRA

133.     Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

134.     On at least one occasion within the past year, by example only and without limitation, FCO violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's disputes.

135.     On one or more occasions within the past year, by example only and without limitation, FCO violated 15 U.S.C.§1681s-2(b)(1)(B) by failing to review all relevant information provided to it by Experian and Equifax.

136.     When the Plaintiff submitted her disputes to Experian and Equifax, Experian and Equifax used a dispute system named, "e-Oscar," which has been adopted by the credit reporting agencies and by their furnisher-customers such as FCO. It is an automated system and the procedures used by the CRAs are systemic and uniform.

137.     When a CRA receives a consumer dispute, it (usually via an off-shore, outsource vendor), translates that dispute into an "ACDV" form.

138.     The ACDV form is the method by which FCO has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

139.     Based on the manner in which Experian and Equifax responded to—or did not respond to Plaintiff's disputes, representing that FCO had "verified" the supposed accuracy of its reporting, Plaintiff alleges that Experian and Equifax did in fact forward the Plaintiff's disputes via an ACDV to FCO.

140.     FCO understood the nature of the Plaintiff's disputes when it received the ACDV from Experian and Equifax.

141.     Notwithstanding the above, FCO follows a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all FCO does is review its own internal computer screen for the account and repeat back to the ACDV system the same information FCO already had reported to the CRAs.

142.     When FCO receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is accurate.

143.     Defendant FCO violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully conduct a reasonable investigation of the Plaintiff's disputes after said disputes were furnished to FCO by Experian and Equifax.

144.     As a result of FCO's violations of 15 U.S.C. §1681s-2(b)(1)(A) and (B), the Plaintiff suffered actual damages, including but not limited to: Loss of potential apartment leases, multiple apartment denials, an eviction from her place of residence, damage to her credit profile, stress associated with multiple denials for credit and delays in applying for future lines of credit, extreme stress, anxiety and humiliation at the thought and possibility of being homeless, monies lost by attempting to fix her credit, loss of time attempting to cure the error, mental anguish, stress, aggravation, anger, anxiety, humiliation, frustration, and other related impairments to the enjoyment of life, and stress associated with many hours attempting to resolve this matter in the last three years..

145.     The violations by FCO were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, FCO was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

146.     The law in this District and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

147.     FCO was aware of *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426 (4th Cir. 2004), when it followed the ACDV procedures used regarding the Plaintiff's dispute. *Johnson*

remains the seminal decision articulating the standard for conducting a reasonable investigation of a consumer's dispute under § 1681s-2(b).

148.    On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that FCO intended its employees or agents to follow.

149.    The Plaintiff is entitled to recover costs and attorneys' fees from FCO in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o. Plaintiff is not seeking joint liability.

## COUNT 4: AGAINST FCO
## Violation of § 1681s-2(b)(1)(C) and (D) of the FCRA

150.    Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

151.    On one or more occasions within the past three years, by example only and without limitation, FCO violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the FCO inaccuracies within Plaintiff's credit files with Experian and Equifax without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

152.    Specifically, FCO failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to Experian and Equifax.

153.    On information and belief, Plaintiff alleges that FCO rarely if ever adds the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

154.    FCO knew that the Plaintiff previously disputed the FCO account on multiple occasions directly with FCO and its agents.

155.    The Plaintiff's disputes were, at a minimum, *bone fide*.

156.     In fact, the Plaintiff's disputes were justified because Plaintiff did not open or consent to open the residential lease account and never owed a debt to either Oak Park Place or FCO.

157.     FCO was aware of the *Saunders v. B.B. & T.* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding the Plaintiff's disputes.

158.     On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that FCO intended its employees or agents to follow.

159.     On information and belief, the Plaintiff alleges that FCO's employees or agents did not make a mistake (in the way in which he or she followed FCO's respective procedures) when he or she received, processed and responded to the Experian ACDVs, and the Equifax ACDVs and did not include the XB code in the CCC field.

160.     On information and belief, the Plaintiff alleges that FCO has not materially changed its FCRA investigation procedures regarding the CCC field in ACDVs after learning of its failures in this case.

161.     As a result of FCO's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: Loss of potential apartment leases, multiple apartment denials, an eviction from her place of residence, damage to her credit profile, stress associated with multiple denials for credit and delays in applying for future lines of credit, extreme stress, anxiety and humiliation at the thought and possibility of being homeless, monies lost by attempting to fix her credit, loss of time attempting to cure the error, mental anguish, stress, aggravation, anger, anxiety, humiliation, frustration,

and other related impairments to the enjoyment of life, and stress associated with many hours attempting to resolve this matter in the last three years.

162.     The violations by FCO were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, FCO was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff is not seeking joint liability.

163.     The Plaintiff is entitled to recover costs and attorneys' fees from FCO in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT 5: AGAINST FCO
## Violation of § 1681s-2(b)(1)(E) of the FCRA

164.     Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

165.     Defendant FCO violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's disputes from Experian and Equifax, and prior to the commencement of this action. This failure to correct Plaintiff's information resulted from FCO's failure to investigate as articulated herein, after FCO received notice of Plaintiff's disputes from Experian and Equifax.

166.     As a result of this conduct, action and inaction of FCO, the Plaintiff suffered damage by loss of potential apartment leases, multiple apartment denials, an eviction from her place of residence, damage to her credit profile, stress associated with multiple denials for credit and delays in applying for future lines of credit, extreme stress, anxiety and humiliation at the thought and possibility of being homeless, monies lost by attempting to fix her credit, loss of time attempting to cure the error, mental anguish, stress, aggravation,

anger, anxiety, humiliation, frustration, and other related impairments to the enjoyment of life, and stress associated with many hours attempting to resolve this matter in the last three years.

167.     FCO's conduct, action and inaction were willful, it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

168.     The Plaintiff is entitled to recover costs and attorneys' fees from FCO in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT 6: AGAINST FCO**
**Violation of § 1692d of the FDCPA**

169.     Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

170.     Defendant FCO violated 15 U.S.C. § 1692d of the FDCPA by engaging in conduct that harassed, oppressed and/or abused the consumers in its attempts to collect a debt.

171.     As a result of this conduct of FCO, Plaintiff suffered actual injury in the form of Loss of potential apartment leases, multiple apartment denials, an eviction from her place of residence, damage to her credit profile, stress associated with multiple denials for credit and delays in applying for future lines of credit, extreme stress, anxiety and humiliation at the thought and possibility of being homeless, monies lost by attempting to fix her credit, loss of time attempting to cure the error, mental anguish, stress, aggravation, anger, anxiety, humiliation, frustration, and other related impairments to the enjoyment of life, and stress associated with many hours attempting to resolve this matter in the last three years.

172.     FCO's violation of § 1692d of the FDCPA render it liable for statutory damages, costs and reasonable attorneys' fees.

173.    As a direct and proximate result of FCO's deceptive acts and practices committed in violation of § 1692d of the FDCPA, Plaintiff was damaged in that she, among other things, suffered stress, anxiety, loss of credit, humiliation and out of pocket expenses.

174.    The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from FCO. Plaintiff requests that FCO be enjoined from attempting to collect the debt alleged to be owed by her because FCO engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards the Plaintiff.

## COUNT 7: AGAINST FCO
## Violation of § 1692e of the FDCPA

175.    Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

176.    Defendant FCO violated 15 U.S.C. § 1692e of the FDCPA by utilizing false and misleading representations and means to collect a debt.

177.    As a result of this conduct of FCO, Plaintiff suffered actual injury in the form of Loss of potential apartment leases, multiple apartment denials, an eviction from her place of residence, damage to her credit profile, stress associated with multiple denials for credit and delays in applying for future lines of credit, extreme stress, anxiety and humiliation at the thought and possibility of being homeless, monies lost by attempting to fix her credit, loss of time attempting to cure the error, mental anguish, stress, aggravation, anger, anxiety, humiliation, frustration, and other related impairments to the enjoyment of life, and stress associated with many hours attempting to resolve this matter in the last three years.

178.    FCO's violation of § 1692e of the FDCPA render it liable for statutory damages, costs and reasonable attorneys' fees.

179.     As a direct and proximate result of FCO's deceptive acts and practices committed in violation of § 1692e of the FDCPA, Plaintiff was damaged in that she, among other things, suffered stress, anxiety, loss of credit, humiliation and out of pocket expenses.

180.     The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from FCO.

181.     Plaintiff requests that FCO be enjoined from attempting to collect the debt alleged to be owed by her because FCO engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards the Plaintiff.

## COUNT 8: AGAINST FCO
### Violation of § 1692e(2) of the FDCPA

182.     Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

183.     Defendant FCO violated 15 U.S.C. § 1692e(2) of the FDCPA by utilizing false and misleading representations as to the characters, amounts and legal status of the alleged debts.

184.     As a result of this conduct of FCO, Plaintiff suffered actual injury in the form of Loss of potential apartment leases, multiple apartment denials, an eviction from her place of residence, damage to her credit profile, stress associated with multiple denials for credit and delays in applying for future lines of credit, extreme stress, anxiety and humiliation at the thought and possibility of being homeless, monies lost by attempting to fix her credit, loss of time attempting to cure the error, mental anguish, stress, aggravation, anger, anxiety, humiliation, frustration, and other related impairments to the enjoyment of life, and stress associated with many hours attempting to resolve this matter in the last three years.

185.     FCO's violation of § 1692e(2) of the FDCPA render it liable for statutory damages, costs and reasonable attorneys' fees.

186.     As a direct and proximate result of FCO's deceptive acts and practices committed in violation of § 1692e(2) of the FDCPA, Plaintiff was damaged in that she, among other things, suffered stress, anxiety, loss of credit, humiliation and out of pocket expenses.

187.     The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from FCO.

188.     Plaintiff requests that FCO be enjoined from attempting to collect the debt alleged to be owed by her because FCO engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards the Plaintiff.

### COUNT 9: AGAINST FCO
### Violation of § 1692e(8) of the FDCPA

189.     Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

190.     Defendant FCO violated 15 U.S.C. § 1692e(8) of the FDCPA by communicating false credit information to a credit reporting bureau.

191.     As a result of this conduct of FCO, Plaintiff suffered actual injury in the form of loss of potential apartment leases, multiple apartment denials, an eviction from her place of residence, damage to her credit profile, stress associated with multiple denials for credit and delays in applying for future lines of credit, extreme stress, anxiety and humiliation at the thought and possibility of being homeless, monies lost by attempting to fix her credit, loss of time attempting to cure the error, mental anguish, stress, aggravation, anger, anxiety,

humiliation, frustration, and other related impairments to the enjoyment of life, and stress associated with many hours attempting to resolve this matter in the last three years.

192.     FCO's violation of § 1692e(8) of the FDCPA render it liable for statutory damages, costs and reasonable attorneys' fees.

193.     As a direct and proximate result of FCO's deceptive acts and practices committed in violation of § 1692e(8) of the FDCPA, Plaintiff was damaged in that she, among other things, suffered stress, anxiety, loss of credit, humiliation and out of pocket expenses.

194.     The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from FCO.

195.     Plaintiff requests that FCO be enjoined from attempting to collect the debt alleged to be owed by her because FCO engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards the Plaintiff.

### COUNT 10: AGAINST FCO
### Violation of § 1692e(10) of the FDCPA

196.     Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

197.     Defendant FCO violated 15 U.S.C. § 1692e(10) of the FDCPA by utilizing false representations and deceptive means to collect a debt.

198.     As a result of this conduct of FCO, Plaintiff suffered actual injury in the form of loss of potential apartment leases, multiple apartment denials, an eviction from her place of residence, damage to her credit profile, stress associated with multiple denials for credit and delays in applying for future lines of credit, extreme stress, anxiety and humiliation at the thought and possibility of being homeless, monies lost by attempting to fix her credit,

loss of time attempting to cure the error, mental anguish, stress, aggravation, anger, anxiety, humiliation, frustration, and other related impairments to the enjoyment of life, and stress associated with many hours attempting to resolve this matter in the last three years.

199.      FCO's violation of § 1692e(10) of the FDCPA render it liable for statutory damages, costs and reasonable attorneys' fees.

200.      As a direct and proximate result of FCO's deceptive acts and practices committed in violation of § 1692e(10) of the FDCPA, Plaintiff was damaged in that she, among other things, suffered stress, anxiety, loss of credit, humiliation and out of pocket expenses.

201.      The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from FCO.

202.      Plaintiff requests that FCO be enjoined from attempting to collect the debt alleged to be owed by her because FCO engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards the Plaintiff.

## COUNT 11: AGAINST FCO
## Violation of § 1692f of the FDCPA

203.      Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

204.      Defendant FCO violated 15 U.S.C. § 1692f of the FDCPA by engaging in unfair and unconscionable means to collect the alleged debt.

205.      As a result of this conduct of FCO, Plaintiff suffered actual injury in the form of Loss of potential apartment leases, multiple apartment denials, an eviction from her place of residence, damage to her credit profile, stress associated with multiple denials for credit

and delays in applying for future lines of credit, extreme stress, anxiety and humiliation at the thought and possibility of being homeless, monies lost by attempting to fix her credit, loss of time attempting to cure the error, mental anguish, stress, aggravation, anger, anxiety, humiliation, frustration, and other related impairments to the enjoyment of life, and stress associated with many hours attempting to resolve this matter in the last three years.

206. FCO's violation of § 1692f of the FDCPA render it liable for statutory damages, costs and reasonable attorneys' fees.

207. As a direct and proximate result of FCO's deceptive acts and practices committed in violation of § 1692f of the FDCPA, Plaintiff was damaged in that she, among other things, suffered stress, anxiety, loss of credit, humiliation and out of pocket expenses.

208. The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from FCO.

209. Plaintiff requests that FCO be enjoined from attempting to collect the debt alleged to be owed by her because FCO engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards the Plaintiff.

## COUNT 12: AGAINST FCO
### Violation of § 1692f(1) of the FDCPA

210. Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

211. Defendant FCO violated 15 U.S.C. § 1692f(1) of the FDCPA by attempting to collect debts not authorized by any agreements.

212.     As a result of this conduct of FCO, Plaintiff suffered actual injury in the form of loss of potential apartment leases, multiple apartment denials, an eviction from her place of residence, damage to her credit profile, stress associated with multiple denials for credit and delays in applying for future lines of credit, extreme stress, anxiety and humiliation at the thought and possibility of being homeless, monies lost by attempting to fix her credit, loss of time attempting to cure the error, mental anguish, stress, aggravation, anger, anxiety, humiliation, frustration, and other related impairments to the enjoyment of life, and stress associated with many hours attempting to resolve this matter in the last three years.

213.     FCO s violation of § 1692f(1) of the FDCPA render it liable for statutory damages, costs and reasonable attorneys' fees.

214.     As a direct and proximate result of FCO's deceptive acts and practices committed in violation of § 1692f(1) of the FDCPA, Plaintiff was damaged in that she, among other things, suffered stress, anxiety, loss of credit, humiliation and out of pocket expenses.

215.     The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from FCO.

216.     Plaintiff request that FCO be enjoined from attempting to collect the debt alleged to be owed by her because FCO engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards the Plaintiff.

## COUNT 13: AGAINST FCO
## Violation of § 1692g of the FDCPA

217.     Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

218.     Defendant FCO violated 15 U.S.C. § 1692g of the FDCPA by failing to send the Plaintiff a 30-day validation notice within five days of its initial communication.

219.     As a result of this conduct of Defendant FCO, Plaintiff suffered actual injury in the form of Loss of potential apartment leases, multiple apartment denials, an eviction from her place of residence, damage to her credit profile, stress associated with multiple denials for credit and delays in applying for future lines of credit, extreme stress, anxiety and humiliation at the thought and possibility of being homeless, monies lost by attempting to fix her credit, loss of time attempting to cure the error, mental anguish, stress, aggravation, anger, anxiety, humiliation, frustration, and other related impairments to the enjoyment of life, and stress associated with many hours attempting to resolve this matter in the last three years.

220.     Defendant FCO's violation of § 1692g of the FDCPA render it liable for statutory damages, costs, and reasonable attorneys' fees.

221.     As a direct and proximate result of FCO's deceptive acts and practices committed in violation of § 1692g of the FDCPA, Plaintiff was damaged in that she, among other things, suffered stress, anxiety, loss of credit, humiliation and out of pocket expenses.

222.     The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from FCO.

223.     Plaintiff request that FCO be enjoined from attempting to collect the debt alleged to be owed by her because FCO engaged in behavior which was harassing or abusing to

Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards the Plaintiff

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Sandra Walker hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

Plaintiff Sandra Walker prays that this Court:

a.  Declare that Defendants Experian and Equifax violated the FCRA;

b.  Declare that Defendant FCO violated the FCRA and FDCPA;

c.  Actual damages pursuant to 15 U.S.C. §1681n(a) 15 U.S.C. § 1692k;

d.  Statutory damages pursuant to 15 U.S.C. §1681n(a)(1)(A) and 15 U.S.C. § 1692k;

e.  Punitive damages pursuant to 15 U.S.C. §1681n(a)(2) and 15 U.S.C. § 1692k;

f.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§1681n(c) and 1681o(b) and 15 U.S.C. § 1692k;

g.  Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law;

h.  Enter judgment enjoining the Defendant FCO from collecting or attempting to collect any debt alleged to be owed by Plaintiff;

i.  Grant such further relief as deemed just.

Respectfully submitted,

Dated: September 19, 2024

**JOHN O. NOLAND, Jr. ESQ.**
**ATTORNEY AT LAW**
134 N LaSalle St Suite 2145
Chicago IL 60602
Telephone: (312) 327-7000
jnolandjr@comcast.net
Attorney I.D. # 6239394
*/s John O. Noland Jr*

**LAW OFFICE OF ABEL L. PIERRE,**
**ATTORNEY-AT-LAW, P.C.**

NY Attorney I.D. # 4102729
140 Broadway, 46th Floor
New York, New York 10005
Telephone: (212) 766-3323
Facsimile: (212) 766-3322
abel@apierrelaw.com

**Attorneys for Plaintiff**

40